## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District **Eastern District of Tennessee** |
|---|---|
| Name (under which you were convicted): DE JUAN SCOTT | Docket or Case No.: <br> 1:22-CR-00053-CLC-SKL-1 |
| Place of Confinement: <br> Lexington Federal Medical Center | Prisoner No.: <br> 01243-510 |
| UNITED STATES OF AMERICA | Movant (include name under which you were convicted) |
| v. DE JUAN MIQUEL SCOTT | |

*FILED*
*AUG 25 2023*
*Clerk, U.S. District Court*
*In District of Tennessee*
*At Chattanooga*

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging
   Eastern District of Tennessee Chattanooga Division

   (b) Criminal docket or case number (if you know): 1:22-CR-00053-CLC-SKL-1

2. (a) Date of the judgment of conviction (if you know): September 12, 2022

   (b) Date of sentencing: September 07, 2022

3. Length of sentence: 120 Months

4. Nature of crime (all counts): SEE ATTACHMENT(A)-(A)(3)

5. (a) What was your plea? (Check one)

   (1) Not guilty ❑      (2) Guilty ☒      (3) Nolo contendere (no contest) ❑

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? I plead
   Guilty to 1s-5s counts of the Superseding Information

6. If you went to trial, what kind of trial did you have? (Check one)      Jury ❑      Judge only ☒

**QUESTION #4:** Nature Of Crime (All Counts).

**INFORMATION:** Filed March 25, 2022 [Doc.#1]

**COUNT ONE:** [Doc.#1] pgID#1
(1). At all time material to this Information, Ameritrust Financial Services, LLC located at or near 5910 Reagan Lane, Ooltewah, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

(2). On or about November 15, 2019, in the Eastern District of Tennessee, the defendant, DEJUAN SCOTT, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Ameritrust Financial Services, LLC and in committing this offense did, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Ameritrust Financial Services, LLC and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

**COUNT TWO:** [Doc.#1] pgID#2
(1). At all time material to this Information, Quick Credit located at or near 1408 Gumbarrel Road, in Chattanooga, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

(2). On or about December 28, 2019, in the Eastern District of Tennessee, the defendant, DEJUAN SCOTT, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Quick Credit, and in committing this offense did, by means of

actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Quick Credit and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

**COUNT THREE:** [Doc.#1] pgID#1

(1). At all times material to this Information, Cash Express located at or near 4830 Highway 58, in Chattanooga, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

(2). On or about December 28, 2019, in the Eastern District of Tennessee, the defendant, DEJUAN SCOTT, did unlawfully obstruct, delay, affect, and attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Cash Express, and in committing this offense did, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Cash Now Advance and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

**SUPERSEDING INFORMATION:** Filed May 05, 2022

**COUNT ONE:** [Doc.#2] pgID#6
Same as 'Count One' of the 'Information' [Doc.#1];

**COUNT TWO:** [Doc.#2] pgID#7
Same as 'Count Two' of the 'Information' [Doc.#1];

(A)(1)

**COUNT THREE:** [Doc.#2] pgID#7

Same as 'Count Three' of the Information [Doc.#1];

**COUNT FOUR:** [Doc.#2] pgID#8

(1). At all times material to this Information, Cash Now Advance, located at or near 6025 East Brainerd Road, in Chattanooga, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

(2). On or about January 3, 2020, in the Eastern District of Tennessee, the defendant, DEJUAN SCOTT, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Cash Now Advance, and in committing this offense did, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Cash Now Advance and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

**COUNT FIVE:** [Doc.#2] pgID#9

(1). At all times material to this Information, Cash Express located at or near 7431 East Brainerd Road, in Chattanooag, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

(2). On or about January 3, 2020, in the Eastern District of Tennessee, the defendant, DEJUAN SCOTT, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the by means of actual and threatened force, violatence, and fear

(A)(2)

7022 0410 0002 3373 2741

of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Cash Express and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☒

8. Did you appeal from the judgment of conviction?     Yes ☐     No ☒

9. If you did appeal, answer the following:

   (a) Name of court: N/A

   (b) Docket or case number (if you know): N/A

   (c) Result: N/A

   (d) Date of result (if you know): N/A

   (e) Citation to the case (if you know): N/A

   (f) Grounds raised: N/A

   (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☒

     If "Yes," answer the following:

     (1) Docket or case number (if you know): N/A

     (2) Result: N/A

     (3) Date of result (if you know): N/A

     (4) Citation to the case (if you know): N/A

     (5) Grounds raised: N/A

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

     Yes ☐     No ☒

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court: N/A

      (2) Docket or case number (if you know): N/A

      (3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐   No ☒

(7) Result: N/A

(8) Date of result (if you know): N/A

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ☐   No ☒

(7) Result: N/A

(8) Date of result (if you know): N/A

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:   Yes ☐   No ☒

(2) Second petition:   Yes ☐   No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: ___N/A_____

_____

_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** Prosecutorial Misconduct and Vindictiveness
Involving AUSA Kevin Brown  continued pg. 1-9

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Attached (A). 1-2

        (B). 2-2

        (C). 2-7

        (D). 7-8

        Conclusion: 8-9

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: ___N/A_____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ___N/A_____

Name and location of the court where the motion or petition was filed: ___N/A_____

_____

Docket or case number (if you know): <u>N/A</u>

Date of the court's decision: <u>N/A</u>

Result (attach a copy of the court's opinion or order, if available): <u>N/A</u>

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: <u>N/A</u>

_____

Docket or case number (if you know): <u>N/A</u>

Date of the court's decision: <u>N/A</u>

Result (attach a copy of the court's opinion or order, if available): <u>N/A</u>

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or

raise this issue: <u>N/A</u>

_____

_____

_____

_____

GROUND TWO: <u>Ineffective Assistance of Counsel</u>

<u>Involving Gianna Maio  continued pg. 9-16</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

<u>Attached (A). 9-10</u>

<u>(B). 10-10</u>

<u>(C). 10-11</u>

<u>(D). 11-13</u>

<u>(E). 13-14</u>

<u>(F). 14-16</u>

<u>Conclusion/Prayer for Relief pg. 16</u>

_____

_____

_____

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: __N/A_____

_____

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❏  No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: __N/A_____

Name and location of the court where the motion or petition was filed: __N/A_____

_____

Docket or case number (if you know): __N/A_____

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): __N/A_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❏  No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❏  No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏  No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: __N/A_____

_____

Docket or case number (if you know): ____N/A_____

Date of the court's decision: __N/A_____

Result (attach a copy of the court's opinion or order, if available): __N/A_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: __N/A_____

_____

_____

_____

_____

**GROUND THREE:** __N/A_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑   No ☒

(2) If you did not raise this issue in your direct appeal, explain why: __N/A_____

_____

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: __N/A_____

Name and location of the court where the motion or petition was filed: __N/A_____

_____

Docket or case number (if you know): __N/A_____

Date of the court's decision: __N/A_____

Result (attach a copy of the court's opinion or order, if available): ___N/A_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ___N/A_____

_____

Docket or case number (if you know): ___N/A_____

Date of the court's decision: ___N/A_____

Result (attach a copy of the court's opinion or order, if available): ___N/A_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: ___N/A_____

_____

_____

_____

_____


**GROUND FOUR:** ___N/A_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑  No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: _N/A_____

_____

_____

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑  No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: __N/A_____

    Name and location of the court where the motion or petition was filed: _N/A_____

_____

    Docket or case number (if you know): __N/A_____

    Date of the court's decision: _N/A_____

    Result (attach a copy of the court's opinion or order, if available): _N/A_____

_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ☒

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ☒

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ☒

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed: _N/A_____

_____

    Docket or case number (if you know): __N/A_____

    Date of the court's decision: ____N/A_____

    Result (attach a copy of the court's opinion or order, if available): _N/A_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:  N/A

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:  N/A

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are challenging?          Yes ☐   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.  N/A

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:  Gianna Maio, One Central Plaza, Suite 600 835 Georgia Avenue Chattanooga, TN 37402

(b) At arraignment and plea:  Gianna Maio, One Central Plaza, Suite 600 835 Georgia Avenue Chattanooga, TN 37402

(c) At trial:  Gianna Maio, One Central Plaza, Suite 600 835 Georgia Avenue Chattanooga, TN 37402

(d) At sentencing:  Gianna Maio, One Central Plaza, Suite 600 835 Georgia Avenue Chattanooga, TN 37402

(e) On appeal: _N/A_____

_____

(f) In any post-conviction proceeding: _N/A_____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _N/A_____

_____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ☐ No ☒

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future: _N/A_____

_____

(b) Give the date the other sentence was imposed: _N/A_____

(c) Give the length of the other sentence: _N/A_____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ☐  No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.* <u>I was sentenced on: September 07, 2022 the Judgment became final on: September 12, 2022 and Movant timely filed his motion on: August 21, 2023 by Certified Mail Number Being: 7022 0410 0002 3373 2741</u>

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

   A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
       (1) the date on which the judgment of conviction became final;
       (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
       (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
       (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

Vacate, of an unlawful conviction of a innocent man, being

DE JUAN MIQUEL SCOTT

or any other relief to which movant may be entitled.

Pro'se DE JUAN MIQUEL SCOTT
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct

and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on

AUGUST 21, 2023                    (month, date, year).
Certified Number: 7022 0410 0002 3373 2741

Executed (signed) on _____AUGUST 21, 2023_____ (date).

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not

signing this motion.

## GROUND ONE: PROSECUTORIAL MISCONDUCT & VINDICTIVENESS

### INTRODUCTION:

A prosecutor's improper or illegal act (or failure to act), especially involving an attempt to avoid required disclosure or to persuade the jury to wrongly convict a defendant or assess an unjustified punishment, is known as prosecutorial misconduct.

The abuse of process by AUSA Kevin Brown prejudiced De Juan Miquel Scott and violated his 4th, 5th, 6th, 8th, 10th, 13th, and 14th Amendment Rights under the United States Constitution. The Governments falsification and manipulation of the record manifested a miscarriage of justice, an involuntary Plea under duress, and the unlawful conviction of an innocent man, being De Juan Miquel Scott.

### FACT (A): UNLAWFUL SEIZURE

On 01-07-2020, De Juan M. Scott was experiencing a Medical Emergency while driving his vehicle. Scott blacked-out, with his foot still on the brakes, in the intersection of Graysville Road and East Brainerd Road. An individual called 911 to report the stopped vehicle. When the first Officer arrived on the scene he woke Scott up, and asked him to pull into the gas station. The Officer then asked for Scott's license and registration, unbeknown to Scott, his first and last name flagged in connection to a robbery in the City of Chattanooga.

While waiting for Medical attention, several Officers and Agents from both the Chattanooga Police Department and the DEA surrounded Scott's vehicle, with firearms drawn and aimed, they viciously yanked Scott out of the vehicle and onto the ground. During this process, several surgically implanted drainage tubes were dislodged from Scott's body. This caused Scott to bleed-out from his open wounds. Officers and Agents assumed that Scott was the same "DeJuan Scott" who was wanted for robbery in Chattanooga.

AUSA Kevin Brown had an obligation to disclose Officers and Agents misconduct. Scott was in need Medical attention on 01-07-2020, instead, he was viciously assaulted by Officers and Agents, and was arrested for a crime committed by another individual with the same name. This case started off as a

Medical Emergency and resulted in an unlawful conviction.

## FACT (B): MIRANDA VIOLATIONS

At no time, prior to or after arrest, was Scott advised of his right to remain silent, his right to have an Attorney present during questioning, and his right to have an Attorney appointed if he could not afford one. At no time did Scott sign any waiver of his Miranda Rights.

During the time following Scott's unlawful arrest, his vehicle was searched without proable cause, consent, or a warrant. Material evidences had been collected and used against him without any recitation of his Miranda Rights. Scott was transported to the Chattanooga Police Department Service Center.

At that time, Scott was interrogated by Detective Robert Simmons, with the Chattanooga Police Department, and an unknown DEA Agent, who both failed to Mirandize Scott. Scott was in severe pain and bleeding. Instead of providing Medical care, the Detective, and the unknown Agent, both told Scott that in-order to receive Medical attention, he first needed to confess to their allegations. The Detective and Agent claimed to know Scott's whereabouts over the previous **10-ten days.** However, the storyline the Detective and Agent portrayed to Scott was inconsistent with where he had been the previous **10-ten days.**

In-fact, previous to 01-07-2020, Scott was admitted to Erlanger Hospital between 12-17-2019 and 12-20-2019. On 12-18-2019, Scott underwent a major Surgery for "Extensive and Complex" incision drainage of Hydradenitis Supportivia abscesses involving Chest, Abdomen, Back, Right Buttock, and Right Thigh. **SEE EX: (M) MEDICAL RECORDS**

AUSA Kevin Brown allowed a prosecution to move forward knowing that Scott never waived his Miranda Rights, and no Miranda Rights were read to him. In conversations between AUSA Brown and Counsel Maio, AUSA Brown stated: "It is incomplete Miranda." **SEE EX: (L) CORRESPONDENCES PAGE.(2)**

## FACT (C): VIOLATION OF DUE PROCESS

Scott was arrested on 01-07-2020, during a Medical Emergency, not a traffic stop. Scott was **not** pulled over by officers, rather, the officers were

notified of an Emergeny involving a stopped vehicle.

Judicial notice of the Docket Sheet for Case No. 1:22-CR-00053-CLC-SKL-1, reflects that the Federal Case started on 03-10-2021. However, judicial notice of the first page of the Docket Sheet identifies the "Date Filed" as "03-25-2022". That date is inconsistent with the first entry "ORDER APPOINTING FEDERAL PUBLIC DEFENDER" on "03-10-2021". [Doc.1] **SEE EX: (A) CERTIFIED DOCKET SHEET, CERTIFIED ON 07-05-2023**

18 U.S.C. § 3161(b) reads "Any Information or Indictment charging an individual with the commission of an offense shall be filed within **30-thirty days** from the date on which such individual was arrested in connection with such charges."

18 U.S.C. § 3162(a)(1)-Sanctions reads, "Any individual against whom a Complaint is filed within the time limit required by section 3161(b) [18 U.S.C § 3161(b)], such charges against that individual contained in such Complaint **shall be dismissed** or otherwise dropped."

In this case, no Complaint was filed, nor were any charges returned from a Federal grand-jury. There was no warrant filed or probable cause identified in the record. AUSA Brown proceeded with prosecution despite obvious violations of the Speedy Trial Act.

Furthermore, AUSA Brown filed a "Waiver of Indictment" two months after the "INFORMATION" was filed. The "Waiver of Indictment" is supposed to be filed **before** an "INFORMATION", **not after**. [Doc.1 and 14] **SEE EX: (B) CERTIFIED INFORMATION (E) CERTIFIED WAIVER OF INDICTMENT, CERTIFIED ON 07-05-2023**

AUSA Brown filed a Superseding Information on 05-05-2022 [Doc.2]. Rule 7(e) of the Federal Rules of Criminal Procceedure provides that the Court may permit Amendment of an Information before verdit, if two conditions are satified; (1) may not charge the defendant with an additional or different offense from that contained in the original Pleading; and (2) Amendment is not permited if it will prejudice substantial rights of the accused.

The first prong of the Rule 7(e) test, which disallows Amendments that charge different or additional offenses, clearly prohibits adding a charge that is based

on a different statutory provision from the existing charges. The Rule also prohibits an Amendment that results in a charge based on an altogether different occurence from the original pleading.

In applying the prejudice prong of the test, Courts focus primarily on wheather permitting the Amendment will cause prejudicial surprise to the accused. Because surprise can usually be alleviated if the defendant is granted additional time to prepare, defense claims that an Amendment of the Pleading is prejudiced are usually rejected where a continuance was either granted or not requested.

The Superseding Information added two charges that were not in the original Information. The Government unlawful Amendment, both surprised and prejudiced Scott. Scott was never arraigned on the original Information. The Government rushed into a Plea Agreement which was filed the same day as the Superseding Information. [Doc.2 and 3]

AUSA Brown filed a motion for Writ of Habeas Corpus Ad Prosequendum on 05-12-2022 [Doc.6]. The motion insinates that an Indictment was returned from a Federal grand-jury. However, no Indictment has been filed in this case. Additionally, the motion and subsequent order insinuate that Scott was a convicted "<u>OFFENDER</u>" in the State case. However, Scott was never convicted in the State case. <u>SEE EX: (G) CERTIFIED WRIT OF HABEAS CORPUS AD PROSEQUENDUM</u>

In conversations between AUSA Brown and Counsel Maio, on 02-11-2022, it was stated "Judge Poole has said this case is old and there needs to be movement by 20-17. Kevin wants waiver and information signed before he enters Plea in State Court. Offer is 10 years concurrent Federal and State sentences. Will not agree anything less than a Plea to Aggravated Robbery. Kevin will not agree to take the case entirely from the State. If he [Scott] files a bond motion, AnCharlene will pull the offer and Kevin will indict him." <u>SEE EX: (L) CORRESPONDENCES PAGE.(9)</u>

On March 25, 2022 at 1:52 PM, "Maio.Gianna [Gianna_Maio@fd.org] wrote: Kevin, once this Federal paperwork is filed, you will place a detainer, correct? If that is the case, I think it is best for Dejuan to be sentenced in Hamilton County before being released to the Federal detainer. Otherwise, he will have to go back to Hamilton County after he is Federally sentenced and we run the risk

of being sent to TDOC. To that end, I just want to be sure that the Hamilton County judgements designate the BOP as the place where he serves his sentence, right." **SEE EX: (K) E-MAILS BETWEEN AUSA BROWN & COUNSEL MAIO PAGE.(1)**

AUSA Kevin Brown responded to Counsel Maio's E-mail on March 25, 2022 at 2:16 PM, "Brown,Kevin (USATNE) [Kevin.Brown@usdoj.gov] wrote: I will file a Writ not a detainer. He should not have to go back to Hamilton County for mere entry of the judgement. I'm in Court right." **SEE EX: (K) E-MAILS PAGE.(1)**

In reply, Counsel Maio wrote to AUSA Brown on March 25, 2022, at 2:43 PM, "Maio.Gianna [Gianna_Maio@fd.org] wrote: I just had a long conservation with John, and he probably going to call you, Kevin. It sounds as though he risk going to TDOC unless his State judgements say time served. I explained the extenuating Medical conditions and he said there may be some tug-of-war between State and Federal as to who houses him given his Medical needs (even if the judgments say concurrent and both sentences are to be served at the BOP). I may also need to talk to regional BOP counsel." **SEE EX: (K) E-MAILS PAGE.(1)**

The E-mails between AUSA Brown and Counsel Maio make it appear as if Scott was convicted on "State Judgment". But again, Scott was never convicted from any State charges. So how could he be sentenced to "time served" if the underlying State charges did not result in a conviction?

The E-mails between the Government and Counsel reveals a scheme to undermined Scott's Due Process rights by abusing the Writ of Habeas Corpus Ad Prosequendum, in order to achieve Jurisdiction of a matter otherwise barred by the Speedy Trial Act.

On March 28, 2022 at 1:12 PM, Counsel Maio wrote this correspondence to AUSA Kevin Brown:

"Hello all,

This is what I learned after talking to someone at the BOP Regional Counsel's office today. I copied his contact Information below (although I think someone else -not Matthew-answered this morning) in case you would

like to verify the same. I am hoping that you will consider not going forward with Plea today so that we can continue to try to craft a resolution that gives Mr. Scott the best possible chance of serving his sentence at the BOP. His Medical situation is deteriorating- he is no longer receiving Humira becuase it was no longer working. That means he will need even more surgeries to remove the pus-filled cysts. They are also not even sure that they have the correct diagnosis at this point because the Medication is not effective.

Regional Counsel confirmed what the Marshals told Kevin and me Friday: because De Juan is in primary State custody, the Marshals will return him on the Writ to Hamilton County after he is Federally sentenced. The BOP will not honor language in the Plea Agreement that designates the BOP as the place where he will serve his State sentence. This has been a source of friction between State and Federal prisons trying to get the BOP to house their inmates, so they are watching for it.

Believe there are several ways to best ensure that he serves the sentence Federally.
1. Enter a Plea to time served in Hamilton County.
2. Dismiss his pending Hamilton County charges without prejudice. He will be arrested on the Federal warrant since the Information Plea paperwork is now signed. Hamilton County can reindict him on the four counts you intend that he pleads to. Once at the BOP, he can file an IADA petition to go to Hamilton County to 10 years concurrent.

3. Bond him out on his Hamilton County charges.
He will be arrested on the Federal Warrant
since the Information Plea paperwork is now
signed. Once he serve his 10 years Federal
sentence, he will return to Hamilton County
Court following release from custody to enter a
Plea in Hamilton County to time served."

<u>SEE EX: (K) E-MAILS PAGE.(4)</u>

It is obvious from the E-mails that AUSA Brown and Counsel Maio,
intended on Hamilton County to convict. The E-mails go back as far as 03-18-2021.
During the heart of Covid-19, on 10-14-2021, another correspondence reads,
"We file Information Plea Agreement, Hamilton County Plea + sentencing  date
happens, and then he is writted over on the Federal detainer."

The scheme orchestrated by the Government and Counsel fell through
back in 2021, when Hamilton County failed to convict. The Writ of Habeas Corpus
Ad Proseqendum was abused when it was based on charges that were filed in
violation of the Speedy Trial Act.

<u>FACT (D): INDUCEMENT OF PLEA AGREEMENT</u>

Judicial notice of [Doc.   2 and 3] shows that the Plea Agreement was
filed on the same day as the Superseding Information, **05-05-2022.**Judicial notice
of [Doc. 12] shows that arraignment proceedings were filed on **06-01-2022.**
The Government rushed a Plea Agreement based on charges which were **not yet**
**arraigned. <u>SEE EX: (C) CERTIFIED SUPERSEDING INFORMATION & (D) CERTIFIED PLEA AGREEMENT</u>**

The Government constructed the Plea Agreement on false findings of
fact, abuse of process, violation of Scott's Speedy Trial Rights, and abuse of
the Writ of Habeas Corpus Ad Prosequendum. The cumulative errors by  all Counsel
involved, violated Scott's substanial rights and amount to **FRAUD UPON THE COURT.**
Scott has no criminal history, prior to this case, nor does he have familiarity
with the criminal justice system.

Scott was coerced into a Plea Agreement under duress. His Medical illness was leveraged against him to sign a Plea Agreement. Scott was told if he did not sign the Plea Agreement, he would not receive adequate Medical treatment.

The Plea Agreement should not be enforced becuase it is based on a falsified record. As mentioned before, the first entry on the Docket Sheet for Case No. 1:22-CR-00053-CLC-SKL-1 is 03-10-2021 not 03-25-2022. The cover page of the Docket Sheet falsly indicates that the case was opened on 03-25-2022. This means the Court accepted a Plea Agreement that is based on a falsified and ambiguous record. In addition, the Plea was contingent on a State conviction, but the State never convicted. **SEE EX: (A) CERTIFIED DOCKET SHEET**

The misconduct of AUSA Brown underminds contract law and amounts to a **BREACH** of the Plea Agreement. For those reasons, Scott requests to withdraw from the Plea.

## CONCLUSION OF GROUND ONE:

The misconduct of AUSA Brown prejudiced Scott and violated his 4th, 5th, 6th, 8th, 10th, 13th, and 14th Amendment Rights of the United States Constitution and prevented Scott from properly defending his case. The falsification of the date, of case initiation, prevented Scott from arguing a Speedy Trial Violation because the date was changed from 03-10-2021 to 03-25-2022.

The Governments deceptive tactics allows ambiguity into the record and misled Scott's Counsel as well as the Court. In addition to the abuse of process, the Government worked in tandem with Scott's Counsel to leverage his Medical illness against him to achieve a Plea. The Court overlooked Scott's Alibi defenses, to include the fact that there was another individual with the same name "De Juan Scott", who had a violent history with multiple robberies.

Scott did **not** commit the alleged crimes he is convicted for. Scott signed a Plea for the sole purpose of receiving dire Medical treatment for a life threatening illness if not treated. He experienced a pattern of Medical neglect, and feared further neglect if he did not sign the Plea deal.

AUSA Brown made the choice to falsify the record and prosecute on charges which are barred by the Speedy Trial Act. The actions of AUSA Brown amount to **FRAUD UPON THE COURT**. For those reason, Scott should be allowed to withdraw from the Plea Agreement, and his sentence and conviction should be revered and vacated with prejudice.


## GROUND TWO: INEFFECTIVE ASSISTANCE OF COUNSEL

### INTRODUCTION:

The minimum standard of lawyer competence in the representation of a criminal defendant, two condition being necessary for a defendant to later show that the lawyer's representation was constitutionally substandard: (1) the lawyer's performance prong), and (2) there must be reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different (the prejudice prong).

The deficient performance of Counsel Gianna Maio, violated Scott's 4th, 5th, 6th, 8th, 10th, 13th, and 14th Constitutional Rights, and prevented Scott from mounting a proper defense.

## FACT (A): FAILURE TO ARGUE UNLAWFUL SEIZURE

Counsel Maio's failure to contest the circumstances of Scott's unlawful arrest prevented him from arging that the arrest was without probable cause, and in violation of his 4th Amendment Constitutional Right.

Scott informed Counsel Maio that his initial contact with the Chattanooga Police, and DEA Agents, was on 01-07-2020 due to a Medical Emergency. Instead of providing Medical care, the Chattanooga Police, and DEA Agents, yanked Scott out of his vehicle and onto the ground.

Two weeks before initial contact with the Chattanooga Police and DEA Agents, Scott underwent surgery from 12-17-2019 thru 12-20-2019, for his Medical ilness by the name of Hydradenitis Supportivia. There were drainage tubes inplanted inside of Scott's Chest, Back, and Left Hip to keep fluid from building up in the wounds. SEE EX: (M) MEDICAL RECORDS

During the unlawful seizure, multiple drainage tubes were yanked out by Officers and Agents, causing Scott to bleed out of his wounds, and internally. Despite Scott's cries for Medical assistance, the Officers and Agents of both the Chattanooga Police Department and the DEA, tossed Scott into a cruiser for about 2 hours while they unlawfully searched his vehicle. Counsel Maio was made aware of those circumstances, yet failed to contest him.

## FACT (B): FAILURE TO CONTEST MIRANDA VIOLATION

Scott informed Counsel Maio, that during the time of his unlawful arrest, the Chattanooga Police, and DEA Agents, failed to advise Scott of his right to remain silent, the right to have an Attorney present during questioning, and the right to have an Attorney appointed, if he could not afford one. Scott, didn't sign a waiver of the Miranda Rule. Evidence, to include personal property, was unlawfully seized and admitted as material evidence against him.

During that time, Scott was subjected to a custodial interrogation, where a confession was coerced, so that Scott could receive Medical care. Scott's Medical Emergency was leverage against him to induce a false statement. Scott was told, that in-order to receive Medical care, Scott needed to say just what the Officers and Agents instructed him to say, before the recording of the interrogation started.

Counsel's failure to contest multiple Miranda violations, prejudiced Scott, and prevented him from suppressing an Unlawfully obtained confession, a Miranda defense, and allowed unlawfully obtained evidence to be used against him.

## FACT (C): VIOLATION OF DUE PROCESS

Pursuant to the 5th Amendment Due Process Clause, basic principles of rules 3, 4, and 5 of the Federal Rules of Criminal Procedure state that "If a defendant is arrested without a warrant, a complaint meeting rule 4(a)'s requirments of probable cause 'must' be promptly filed in the district where the offense was allegedly committed."

There was no Criminal Complaint filed in the District Court, nor was there any proable cause identified, nor a warrant filed in the Court.

Instead, the record reflects that counsel was first appointed on "03-10-2021" and then re-appointed on "06-01-2022". [Doc.1 and 9] <u>SEE EX: (A) CERTIFIED DOCKET SHEET, CERTIFIED ON 07-05-2023</u>

Judicial notice of Certified Docket Sheet, reveals ambiguous dates of Case initiation. On the front page of the 'Docket Sheet' it reads that this case was started on "03-25-2022", however the first docket entry is dated "03-10-2021". Counsel failed to detect, or contest, the deceitful tactics used by the Government.

A basic investigation of the attached 'Docket Sheet', reveals violations of the Speedy Trial Act, and inconsistencies of fair process. Another plain error is the filing of a "Waiver of Indictment" several months after filing of an "Information". The "Information" was filed on 03-25-2022, the "Waiver of Indictment" was filed on 06-01-2022. [Doc.1 and 14] <u>SEE EX: (B) CERTIFIED INFORMATION (E) CERTIFIED WAIVER OF INDICTMENT</u>

Furthermore, despite Scott's insistence, Counsel Maio refused to advocate why Scott had been on East Brainerd Road the day of arrest on 01-07-2020. Scott had witnesses willing to testify where he was traveling to and from on 01-07-2020. There was a "GPS Tracker" on his Car-Mart leased vehicle.

Counsel's failure to advocate for any one of the Alibi defense, prejudiced Scott's right to a fair process, and prevented the Court from adjudicating on the totality of the facts. Counsel's reluctence to perform at the requests of defendant Scott, underminded his fundamental right to a fair process, which are protected under the 5th Amendment of the United States Constitution.

## FACT (D): FAILURE TO CONTEST VIOLATION OF SPEEDY TRIAL ACT

Scott, invokes upon this court 18 U.S.C. § 3161. At section § 3161(a) "Time Limits and Exclusions: In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earlist practicable time, shall, after consultation with the counsel for the defendant and the Attorney for the

Government, set the case for trial on a day certain, so as to assure a Speedy Trial."

18 U.S.C. § 3161(b) reads, "Any Information or Indictment charging an individual with the commission of an offense shall be filed within **30-thirty days** from the date on which such individual was arrested in connection with such charges."

18 U.S.C. § 3161(c)(1) reads, "In any case in which a 'Plea of Not Guilty' is enter, the trial of a defendant charged in an Information or Indictment with the commission of an offense shall commence within **70-seventy days** from the filing date and making public of the Information or Indictment."

Judicial notice of Scott's Sentencing Monitoring Computation Data Sheet, as of 12-02-2022, reflects that Scott receive jail time credit from 01-07-2020 thru 09-12-2022. That is a total of **980 days** according to the record. **SEE EX: (J) SENTENCING MONITORING COMPUTATION DATA SHEET**

On 03-25-2022 an 'Information' was filed [Doc.1]. The 'Information' was filed one year and fifteen days after an Order was given, appointing Federal Public Defender Gianna Maio.

On 05-05-2022 a Superseding Information was filed adding another **41 days,** bringing the total to **421 days.** [Doc.2] **SEE EX: (C) CERTIFIED SUPERSEDING INFORMATION**

Judicial notice of the first entry on the Docket Sheet identifies case initiation as 03-10-2021. However, Scott was arrested on 01-07-2020. As refenced above in 18 U.S.C. § 3161(b) "Information...shall be filed within **30-thirty days** from the date on which such individual was arrested in connection with such charges." The 'Information' was filed well beyond the **30-thirty days** limit.

Counsel Maio's failure to challenge obvious Speedy Trial errors. These errors are sactioned by 18 U.S.C. § 3162.

18 U.S.C. § 3162- SANCTION-(a)(1) "Any individual against whom a Complaint is filed charging such individual with an offense. No Indictment or Information is filed within the time limit required by section § 3161(b) [18 U.S.C. § 3161(b)]. Such charges against that individual contained in such Complaint **'shall' be dismissed or otherwise dropped**."

## FACT (E): FAILURE TO CONTEST THE ABUSE OF THE WRIT OF HABEAS CORPUS AD PROSEQUENDUM AND THE FRAUD UPON THE COURT

The purpose of the Writ of Habeas Corpus Ad Prosequendum is to remove a prisoner to the proper Jurisdiction for prosecution in the case of a State Convict accused of violating Federal Criminal Law. The use of the Writ ensures the convict a Speedy Trial in Federal Court by effecting his production for trial in Federal Court before the Completion of his State prison sentence. The Writ is **not** a "Detainer" within meaning of Interstate Agreement on Detainers and does not trigger application of arrest. Once Federal detainer has been lodged against State prisoner, the Writ constitutes 'written request for temporary custody' within meaning of Article IV of Detainers Act.

A sovereign that First arrests an offender has primary Jurisdiction over the offender for trial, sentencing, and incarceration until that sovereign relinquish's its priority by (1) bail release, (2) dismissal of the State charges, (3) parole release or, (4) expiration of sentence. A sovereign does not relinquish authority by producing a State prisoner for sentencing in Federal Court via a Writ of Habeas Corpus Ad Prosequendum.

Scott was never released on bail in the State. The State did not dismiss the State charges until **after** the Writ of Habeas Corpus Ad Prosequendum. He was never on parole release. Nor was he sentenced in State Case: 310701, 310371, 310372, 310373, 310458, and 310457. However, Scott was led to believe that he had been convicted in the underlying State case.

This Federal Case: 1:22-CR-00053-CLC-SKL-1, and the Tennessee State case are based on the same events, witnesses, witness testimony, and material evidence. The rule that the Federal and State Governments may both prosecute a prisoner for a crime, without violating the Constitutional protection against

Double Jeopardy, if the persons act violated both Jurisdictions laws, is known as the Dual-Sovereignty Doctrine.

Counsel Maio's failure to challenge the Governments petition for Writ of Habeas Corpus Ad Prosequendum, [D.N. 6], and the subsequent ORDER to issue the Writ [D.N. 7] prevented Scott from arguing that the petition and ORDER both used the words 'OFFENDER' and 'INDICTMENT'. However, Scott was never convicted in the State case, nor did an Indictment return from a Federal Grand Jury in Case No. 1:22-CR-00053-CLC-SKL-1.

Furthermore, the Writ of Habeas Corpus Ad Prosequendum was filed based on false statements. The notice of initial appearance [D.N. 22], states that "is to advise that the initial appearance of defentant De Juan M. Scott on the Information in this matter." However, the petition and Order for Writ of Habeas Corpus Ad Prosequendum make it appear that a Federal Grand Jury returned an Indictment, a known 'misrepresentation of the facts'. No Indictment was filed in Case No. 1:22-CR-00053-CLC-SKL-1. **SEE EX: (G) CERTIFIED WRIT**

Additionally, the Governments petition for Writ of Habeas Corpus Ad Prosequendum was filed one year and two months after the initiation of this case, being 03-10-2021. That is two years and four months from the date of arrest, being 01-07-2020. The Writ issue based on an Information that was filed well beyond the day of arrest being 01-07-2020. "Any Information...'shall' be filed within **30-thirty days** from the date on which such individual was arrest." [18 U.S.C. § 3161(b)].

Counsel Maio's failure to investigate these obvious egregious errors, prejudiced Scott of the effective assistance of counsel and prevented him from arguing the **FRAUD UPON THE COURT,** through the Governments abuse of the Writ of Habeas Corpus Ad Prosequendum. The Government filing of the Writ of Habeas Corpus Ad Prosequendum was in violation of the Speedy Trial Act, and based on False Statements. This led to a Plea Agreement based on known falsities.

**FACT (F): LEVERAGE OF MEDICAL NEEDS TO INDUCE AN UNINTELLIGENT, UNKNOWING AND INVOLUNTARY PLEA UNDER DURESS**

Scott is diagnosed with "<u>HYDRADENITIS SUPPORTIVIA</u>", a chronic illness that requires routine evaluations and emergency surgeries. The initial contact with Officers and Agents, was shortly after one of such major surgeries.

The Police were contacted because Scott was having a Medical Emergency on 01-07-2020. Instead of providing Medical Assistance, the Officers and Agents, arrested Scott based on his name being the same as that individual, who was wanted in connection to a robbery in the City of Chattanooga.

The mistaken identity led Officers and Agents to neglect Scott's Medical Emergency. The officers and Agents interrogated Scott for crime he had no involvement in. Multiple times, Scott begged for Medical Attention and for his Attorney. He was bleeding out of his wounds, due to the multiple draining tubes that were ripped out of his body. From that moment on, neglect allowed Scott's health to decline to a level threatened by death.

Scott was desperate to receive Medical Care. However, Scott was told, in-order to receive Medical Care, he must first confess to the alleged offense. Scott said what he was told to say, in-order to receive Medical Care. Unfortunately, that was not the only time his illness was leverage against him.

Counsel Maio was well aware of Scott's Medical illness, and the circumstances surrounding Scott's unlawful arrest. Instead of exposing the misconduct of the Officers and Agents, Counsel chose to leverage his Medical needs against him in return for a Guilty Plea. Scott was told by Counsel Maio, "You are a black man convicted in the State of Tennessee to aggravated robbery and aggravated kidnapping charges. If you do not want to die in the Hamilton County Jail, and want to receive better Medical Treatment, you need to sign this Plea to 120 months."

Scott had already experienced Medical neglect, and feared for his life. Scott agreed to the Plea Deal only to receive Medical Care at a B.O.P. Medical Prison. The circumstances surrounding the Plea Agreement amount to a '<u>BREACH OF CONTRACT</u>', because for one, the Government falsified the record in-order to obtain Jurisdiction, and for two, Scott's Medical needs were continuously leveraged against him.

## CONCLUSION OF GROUND TWO:

Counsel Maio's ineffective assistance of Counsel violated Scott's; 4th, 5th, 6th, 8th, 10th, 13th, and 14th Amendments Rights to The United States Constitution. Scott was prevented from a proper defense becuase counsel failed to detect, challenge, and or investigate the Government misconduct. In addition Counsel opposed Scott by leveraging his Medical needs against him. If not for the Government misconduct, and the ineffective assistance of counsel, Scott would have been able to argue Unlawful Seizure, Miranda Violations, Due Process Violations, Lack of a Criminal Complaint, Alibi Defense, Speedy Trial Act Violations, Abuse of Writ of Habeas Corpus Ad Prosequendum, Broadened Information, and a Leveraged Plea Agreement based on erroneous findings of fact.

## PRAYER FOR RELIEF:

Scott humbly comes bfore this Honorable Court, to pray this Court see's clearly misconduct of the Government, and the ineffective assistance of counsel claims, presented in this petition for Habeas Corpus relief. Scott believes he has presented sufficient evidence to merit a reveral and vacation of his sentence and conviction with prejudice. Scott prays that relief will be GRANTED.

## LIST OF EXHIBIT

(A). CERIFIED DOCKET SHEET

(B). CERTIFIED INFORMATION

(C). CERTIFIED SUPERSEDING INFORMATION

(D). CERTIFIED PLEA AGREMENT

(E). CERTIFIED WAIVER OF INDICTMENT

(F). CERTIFIED JUDGMENT IN A CRIMINAL CASE

(G). CERTIFIED WRIT OF HABEAS CORPUS AD PROSEQUENDUM

(H). CERTIFIED ORDER FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM

(I). CERTIFIED DUE PROCESS PROTECTIONS ACT ORDER

(J). SENTENCING MONITORING COMPUTATION DATA SHEET

(K). E-MAILS

(L). CORRESPONDENCES

(M). MEDICAL RECORDS

**Query    Reports    Utilities    Help    Log Out**

ATTEST: A true copy
Certified this
LeAnna R. Wilson, Clerk
by _____ Dep. Clerk

CLOSED,CLC2

## Live Database
## U.S. District Court - Eastern District of Tennessee (Chattanooga)
## CRIMINAL DOCKET FOR CASE #: 1:22-cr-00053-CLC-SKL-1

Case title: USA v. Scott

Date Filed: 03/25/2022

Date Terminated: 09/12/2022

---

Assigned to: District Judge Curtis L Collier
Referred to: Magistrate Judge Susan K Lee

### Defendant (1)

**Dejuan Scott**
*TERMINATED: 09/12/2022*

represented by **Gianna Maio**
**Federal Defender Services of Eastern
Tennessee, Inc. (Chatt)
One Central Plaza, Suite 600
835 Georgia Avenue
Chattanooga, TN 37402
423-756-4349
Fax: 423-756-4345
Email: gianna_maio@fd.org**
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED
Designation: Public Defender or
Community Defender Appointment*

| | |
|---|---|
| **Pending Counts** | **Disposition** |
| 18:1951.F INTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE (1s-5s) | The defendant received a sentence of 120 months imprisonment on Counts One, Two, Three, Four and Five of the Superseding Information to run concurrently, with 3 years of supervised release to run concurrently and ordered to pay a $500.00 special assessment |
| **Highest Offense Level (Opening)** | |
| Felony | |
| **Terminated Counts** | **Disposition** |
| 18:1951.F INTERFERENCE WITH COMMERCE BY THREAT OR VIOLENCE (1-3) | Superseding Information filed May 5, 2022; Counts Superseded/Disposed |

| 05/16/2022 | 8 | NOTICE OF HEARING as to Dejuan Scott Change of Plea Hearing set for **6/1/2022** 02:00 PM in Courtroom 3 - Chattanooga before District Judge Curtis L Collier. (CBS) (Entered: 05/16/2022) |
|---|---|---|
| 06/01/2022 | 9 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Dejuan Scott. Gianna Maio for Dejuan Scott appointed. Signed by Magistrate Judge Susan K Lee on 6/1/22. (CNC) (Entered: 06/01/2022) |
| 06/01/2022 | 10 | DUE PROCESS PROTECTIONS ACT ORDER as to Dejuan Scott. Signed by Magistrate Judge Susan K Lee on 6/1/22. (CNC) (Entered: 06/01/2022) |
| 06/01/2022 | 11 | ORDER OF DETENTION as to Dejuan Scott. Signed by Magistrate Judge Susan K Lee on 6/1/22. (CNC) (Entered: 06/01/2022) |
| 06/01/2022 | 12 | Minute Entry for proceedings held before Magistrate Judge Susan K Lee:Initial Appearance as to Dejuan Scott held on 6/1/2022, Arraignment as to Dejuan Scott (1) Count 1-3,1s-5s held on 6/1/2022 Attorney Gianna Maio for Dejuan Scott present. Not guilty plea entered. (CNC) (Entered: 06/01/2022) |
| 06/01/2022 | 13 | Minute Entry for proceedings held before District Judge Curtis L Collier:Change of Plea Hearing as to Dejuan Scott held on 6/1/2022. Plea entered by Dejuan Scott (1) Guilty Count 1s-5s of the Superseding Information. Sentencing set for **10/5/2022** 02:00 PM in Chattanooga before District Judge Curtis L Collier. (Court Reporter Elizabeth Coffey) (BJL) (Main Document 13 replaced- minute document to reflect the waiver of indictment on 6/2/2022) (BJL). Modified on 6/2/2022 (BJL). (Entered: 06/01/2022) |
| 06/01/2022 | 14 | WAIVER OF INDICTMENT by Dejuan Scott (BJL) (Entered: 06/02/2022) |
| 07/21/2022 | 15 | MOTION to Expedite *Sentencing* by Dejuan Scott. (Maio, Gianna) (Entered: 07/21/2022) |
| 07/21/2022 | 16 | PRESENTENCE INVESTIGATION REPORT (Sealed) as to Dejuan Scott. Objections or a Notice of No Objections must be filed within 14 days pursuant to LR 83.9(c). Instructions can be found here: http://www.tned.uscourts.gov/sites/tned/files/psrs.pdf (Simpson, Pamela) (Entered: 07/21/2022) |
| 07/22/2022 | 17 | NOTICE re Anticipated Length of Sentencing or Revocation Hearing as to Dejuan Scott. Please email completed form to collier_chambers@tned.uscourts.gov on or before the deadline for objections as to the sentencing hearings. If your estimate changes substantially, please send an update to the email address above no later than three (3) days before the hearing. (BJL) (Entered: 07/22/2022) |
| 07/25/2022 | 18 | ORDER as to Dejuan Scott GRANTING 15 MOTION to Expedite *Sentencing* filed by Dejuan Scott. Sentencing reset for **9/7/2022** 02:00 PM in Chattanooga before District Judge Curtis L Collier. Signed by District Judge Curtis L Collier on 7/25/2022. (BJL) (Entered: 07/25/2022) |
| 07/26/2022 | 19 | NOTICE OF NO OBJECTIONS to Presentence Investigation Report by USA as to Dejuan Scott regarding 16 Presentence Investigation Report, (Brown, Kevin) (Entered: 07/26/2022) |
| 08/31/2022 | 20 | NOTICE OF NO OBJECTIONS to Presentence Investigation Report by Dejuan Scott (Maio, Gianna) (Entered: 08/31/2022) |
| 08/31/2022 | 21 | PRESENTENCE INVESTIGATION REPORT (Addendum)(Sealed) as to Dejuan Scott (RDB) (Entered: 08/31/2022) |
| 08/31/2022 | 22 | (REVISED) PRESENTENCE INVESTIGATION REPORT (Sealed) as to Dejuan Scott (RDB) (Entered: 08/31/2022) |



FILED

MAR 2 5 2022

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:22-cr- 5 3 |
| | ) | |
| v. | ) | Judge  Collier / Lee |
| | ) | |
| | ) | Magistrate Judge |
| DEJUAN SCOTT | ) | |

## INFORMATION

## COUNT ONE

The United States Attorney charges that:

1.   At all times material to this Information, Ameritrust Financial Services, LLC located at or near 5910 Reagan Lane, in Ooltewah, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

2.   On or about November 15, 2019, in the Eastern District of Tennessee, the defendant, **DEJUAN SCOTT,** did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Ameritrust Financial Services, LLC and in committing this offense did, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Ameritrust Financial Services, LLC and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

# FILED

MAY 0 5 2022

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:22-cr-53 |
| | ) | |
| v. | ) | Judge Collier |
| | ) | |
| | ) | Magistrate Judge Lee |
| DEJUAN SCOTT | ) | |

## SUPERSEDING INFORMATION

## COUNT ONE

The United States Attorney charges that:

1.    At all times material to this Information, Ameritrust Financial Services, LLC located at or near 5910 Reagan Lane, in Ooltewah, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

2.    On or about November 15, 2019, in the Eastern District of Tennessee, the defendant, **DEJUAN SCOTT,** did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Ameritrust Financial Services, LLC and in committing this offense did, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Ameritrust Financial Services, LLC and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

1

and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Cash Express, and in committing this offense did, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Cash Express and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

## COUNT FOUR

The United States Attorney further charges that:

     1.   At all times material to this Information, Cash Now Advance, located at or near 6025 East Brainerd Road, in Chattanooga, Tennessee, was engaged in commercial activities in interstate commerce and an industry that affects interstate commerce.

     2.   On or about January 3, 2020 , in the Eastern District of Tennessee, the defendant, **DEJUAN SCOTT,** did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, of Cash Now Advance, and in committing this offense did, by means of actual and threatened force, violence, and fear of injury, immediate and future, to the person of another, take and cause to be taken from the person and presence of another, money, belonging to and in the custody and possession of Cash Now Advance and its owners and employees, all in violation of Title 18, United States Code, Section 1951.

3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:22-cr-53 |
| | ) | |
| v. | ) | Judge Collier |
| | ) | |
| | ) | Magistrate Judge Lee |
| DEJUAN SCOTT | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Dejuan Scott, and the defendant's attorney, Gianna Maio, have agreed upon the following:

1)      The defendant will waive his right to indictment and plead guilty to the following counts in the superseding information: **Counts 1, 2, 3, 4, & 5:** The defendant did unlawfully obstruct, delay, and affect commerce by committing a robbery of a business that affected interstate commerce, also known as "Hobbs Act Robbery," in violation of Title 18, United States Code, Section § 1951.

The punishment for each count of this offense is as follows: imprisonment for a term of up to 20 years; supervised release for a term up to 3 years; fine of up to $250,000; forfeiture; any lawful restitution; and a $100 special assessment.

2)      There are no remaining counts against the defendant.

3)      The defendant has read the superseding information, discussed the charges and possible defenses with defense counsel and understands the crime(s) charged.  The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty, the defendant agrees that each of the following elements of the crime(s) must be proved beyond a reasonable doubt:

Case 1:23-cv-00053-CLC-SKL   Document 1   Filed 06/03/23   Page 40 of 80   PageID #: 113

h)      The defendant entered the business, brandished a knife, and demanded money from an employee. Out of fear, the employee handed the defendant approximately $2,300 from the cash drawer. The defendant then left the business.

i)      The defendant admits that he knowingly and unlawfully took money, that was the property of Cash Express, from the presence of another, against that person's will, by actual or threatened force, violence, or fear of injury, and that such affected interstate commerce, as charged in Count Three of the Superseding Information.

### Count Four

j)      January 3, 2020, at approximately 1011 hours, the defendant robbed Cash Now Advance, located at 6025 East Brainerd Road, Chattanooga, Tennessee, in the Eastern District of Tennessee.

k)      The defendant entered the business and stated, "you are being robbed." The defendant then approached the manager, brandished a knife, and stated, "I want all the money." The manager then laid on the floor, and the defendant asked, "where is the pouch of money?" The manager told the defendant, out of fear, and the defendant took approximately $844 from the cash box under the counter and left the business.

l)      The defendant admits that he knowingly and unlawfully took money, that was the property of Cash Now Advance, from the presence of another, against that person's will, by actual or threatened force, violence, or fear of injury, and that such affected interstate commerce, as charged in Count Four of the Superseding Information.

*Count Five*

m)      On January 3, 2020, at approximately 1200 hours, the defendant robbed Cash Express located at 7341 East Brainerd Road, Chattanooga, Tennessee, in the Eastern District of Tennessee.

n)      The defendant brandished a knife to an employee and demanded money. The employee provided money from the register and the defendant left the business.

o)      The employee advised that a blue Chevrolet Malibu pulled into a parking lot located behind Cash Express approximately 20 minutes prior to the robbery. Law Enforcement obtained a partial tag of the vehicle via video surveillance footage. A law enforcement database search revealed that the vehicle was registered to the defendant.

p)      The defendant admits that he knowingly and unlawfully took money, that was the property of Cash Express, from the presence of another, against that person's will, by actual or threatened force, violence, or fear of injury, and that such affected interstate commerce, as charged in Count Five of the Superseding Information.

q)      On January 8, 2020, law enforcement located and arrested the defendant. The defendant was in possession of the knife and mask utilized in the robberies charged in Counts One, Two, Three, Four, and Five.

5)      The defendant is pleading guilty to Count 1, 2, 3, 4, and 5 because the defendant admits he is in fact guilty. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

a)      the right to plead not guilty;

b)      the right to a speedy and public trial by jury;

c)      the right to assistance of counsel at trial;

imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

        a)     If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

        b)     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

        c)     If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

        9)     The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for

12) This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

5/5/22
Date

By: _____
Kevin T. Brown
Special Assistant United States Attorney

05-02-2022
Date

_____
Dejuan Scott
Defendant

5.2.22
Date

_____
Gianna Maio
Defendant's Attorney

Page 9 of 9

# UNITED STATES DISTRICT COURT
for the

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 1:22-cr-53 |
| DEJUAN SCOTT | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

    I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

    After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____05/31/2022_____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Gianna Maio
_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

Curtis L. Collier, United States District Judge
_____
*Judge's printed name and title*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE CHATTANOOGA DIVISION

UNITED STATES OF AMERICA

v.

DEJUAN SCOTT

USM#01243-510

**JUDGMENT IN A CRIMINAL CASE**

Case Number: **1:22-CR-00053-CLC-SKL(1)**

**Gianna Maio**
Defendant's Attorney

## THE DEFENDANT:

☒ pleaded guilty to count(s): <u>One, Two, Three, Four and Five of the Superseding Information.</u>

☐ pleaded nolo contendere to count(s)   which was accepted by the court.

☐ was found guilty on count(s)   after a plea of not guilty.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section and Nature of Offense | Date Violation Concluded | Count |
|---|---|---|
| 18 U.S.C. § 1951<br>Hobbs Act Robbery | 11/15/2019 | 1s |
| 18 U.S.C. § 1951<br>Hobbs Act Robbery | 12/28/2019 | 2s |

The defendant is sentenced as provided in pages 2 through 9 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553.

☐ The defendant has been found not guilty on count(s).

☐ All remaining count(s) as to this defendant are dismissed upon motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and the United States attorney of any material change in the defendant's economic circumstances.

September 7, 2022
Date of Imposition of Judgment

/s/
Signature of Judicial Officer

**Curtis L. Collier, United States District Judge**
Name & Title of Judicial Officer

September 12, 2022
Date

# ADDITIONAL COUNTS OF CONVICTION

| Title & Section and Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18 U.S.C. § 1951<br>Hobbs Act Robbery | 12/28/2019 | 3s |
| 18 U.S.C. § 1951<br>Hobbs Act Robbery | 01/03/2020 | 4s |
| 18 U.S.C. § 1951<br>Hobbs Act Robbery | 01/03/2020 | 5s |

| | | |
|---|---|---|
| DEFENDANT: | DEJUAN SCOTT | Judgment - Page 4 of 9 |
| CASE NUMBER: | 1:22-CR-00053-CLC-SKL(1) | |

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **three (3) years**. This term consists of three-year terms as to each of Counts One, Two, Three, and Four, and Five of the Superseding Information, to run concurrently.

# MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.

2. You must not unlawfully possess a controlled substance.

3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. (*check if applicable*)

4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentencing of restitution. (*check if applicable*)

5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. (*check if applicable*)

6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. (*check if applicable*)

7. ☐ You must participate in an approved program for domestic violence. (*check if applicable*)

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

| | | |
|---|---|---|
| DEFENDANT: | DEJUAN SCOTT | Judgment - Page 6 of 9 |
| CASE NUMBER: | 1:22-CR-00053-CLC-SKL(1) | |

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant must pay any financial penalty that is imposed by the judgment, and that remains unpaid at the commencement of the term of supervised release.

2. The defendant must provide the probation officer with access to any requested financial information.

3. The defendant must not incur new credit charges on existing accounts or apply for additional lines of credit without permission of the probation officer until the restitution has been paid in full. In addition, the defendant must not enter into any contractual agreements which obligate funds without the permission of the probation officer.

4. The defendant must participate in a program of testing and/or treatment for drug and/or alcohol abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.

5. The defendant must participate in a program of mental health treatment, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer.

6. The defendant must waive all rights to confidentiality regarding mental health and substance abuse treatment in order to allow release of information to the supervising United States Probation Officer and to authorize open communication between the probation officer and the treatment providers.

7. The defendant must submit his property, house, residence, vehicle, papers, computers, or office, to a search conducted by a United States Probation Officer or designee. Failure to submit to a search may be grounds for revocation of release. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when a reasonable suspicion exists that the defendant has violated a condition of his supervision, and the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

| | | |
|---|---|---|
| DEFENDANT: | DEJUAN SCOTT | Judgment - Page 8 of 9 |
| CASE NUMBER: | 1:22-CR-00053-CLC-SKL(1) | |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payment of $     due immediately, balance due
    ☐ not later than     , or
    ☒ in accordance with     ☐   C,    ☐   D,    ☐   E, or    ☒   F below; or

**B** ☐ Payment to begin immediately (may be combined with    ☐   C,    ☐   D, or    ☐   F below); or

**C** ☐ Payment in equal     *(e.g., weekly, monthly, quarterly)* installments of $     over a period
    of     *(e.g., months or years)*, to commence     *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal     *(e.g., weekly, monthly, quarterly)* installments of $     over a period
    of     *(e.g., months or years)*, to commence     *(e.g., 30 or 60 days)* after release from imprisonment to a term of
    supervision; or

**E** ☐ Payment during the term of supervised release will commence within     *(e.g., 30 or 60 days)* after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☒ Special instructions regarding the payment of criminal monetary penalties:

    During the period of incarceration, payment shall be made as follows: (1) if the
    defendant earns wages in a Federal Prison Industries (UNICOR) job, then the
    defendant must pay a minimum of 50 percent of wages earned toward the financial
    obligations imposed by this Order; (2) if the defendant does not work in a UNICOR
    job, then the defendant must pay a minimum of $25 per quarter toward the financial
    obligations imposed in this Order. These payments made while incarcerated do not
    preclude the government from using other assets or income of the defendant to
    satisfy his/her restitution obligation.

    Upon release from incarceration, defendant shall pay restitution at the minimum
    rate of 10 percent of monthly gross income until such time as the Court may alter
    that payment schedule in the interests of justice.

    The government may enforce the full amount of restitution ordered at any time,
    pursuant to Title 18 U.S.C. §§ 3612, 3613 and 3664(m).

    The United States Bureau of Prisons, United States Probation Office, and the United States
    Attorney's Office shall monitor the payment of restitution and reassess and report to the
    Court any material change in the defendant's ability to pay.

    The defendant must notify the Court and the Attorney General of any material change in the defendant's economic
    circumstances that might affect the defendant's ability to pay restitution.

Case 1:23-cv-00083-TRM-SKL Document 25 Filed 08/25/23 Page 50 of 80 PageID
#: 123
Case 1:22-cr-00053-CLC-SKL Document 25 Filed 09/12/22 Page 8 of 9 PageID #: 131

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

I hereby certify that this is a true and correct copy of the electronically filed original document.
ATTEST: LeAnne R. Wilson, Clerk
By: _____ 8/2/2023
Deputy Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:22-CR-53 |
| V. | ) | |
| | ) | JUDGES COLLIER/LEE |
| DEJUAN SCOTT | ) | |

TO THE HONORABLE JUDGE OF THE ABOVE COURT:

## PETITION FOR WRIT OF HABEAS CORPUS AD PROSEQUENDUM

_____

Your petitioner, the United States of America, by Francis M. Hamilton III, United States Attorney for the Eastern District of Tennessee, respectfully shows:

I.

That **Dejuan Scott, Offender #TN544733,** is now in the custody of the Sheriff of the Hamilton County Jail, Chattanooga, Tennessee, pursuant to State charges.

II.

That there is pending against the defendant Dejuan Scott in this District the above-captioned case, which is set for an Initial Appearance on **June 1, 2022, at 10:30 a.m.,** or for his case to be otherwise disposed of upon said indictment heretofore returned against him in the United States District Court for the Eastern District of Tennessee, at Chattanooga, Tennessee, and each day thereafter until said case is disposed of.

WHEREFORE, petitioner prays that the Clerk of this Court be instructed to issue a writ of habeas corpus ad prosequendum to the Sheriff of the Hamilton County Jail, Chattanooga, Tennessee, commanding him to produce the said Dejuan Scott before this Court at the time and place aforesaid for the purpose aforesaid, and that if the said Sheriff so elects, the United States

Marshal for the Eastern District of Tennessee, or any other duly authorized United States Marshal or Deputy United States Marshal, be ordered and directed to receive said Dejuan Scott into his custody and possession at said Hamilton County Jail, Chattanooga, Tennessee, and under safe and secure conduct to have him before the Judge of our District Court at the time and place aforesaid for the purpose aforesaid, and to return him to said Sheriff of the Hamilton County Jail, Chattanooga, Tennessee, as aforesaid.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By:  *s/ Kevin T. Brown*
Kevin T. Brown, BPR #034166
Special Assistant United States Attorney
1110 Market Street, Suite 515
Chattanooga, TN 37402
(423) 752-5140
kevin.brown@usdoj.gov

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:22-CR-53 |
| V. | ) | |
| | ) | JUDGES COLLIER/LEE |
| DEJUAN SCOTT | ) | |

## O R D E R

On the petition of the United States of America by Francis M. Hamilton III, United States

Attorney for the Eastern District of Tennessee, it is hereby **ORDERED** that:

1. The Clerk of this Court is instructed to issue a writ of *habeas corpus ad prosequendum* to the Sheriff/Warden of the Hamilton County Jail, Chattanooga, Tennessee, to bring **Dejuan Scott, Offender #TN544733**, before this Court at Chattanooga, Tennessee, on **June 1, 2022**, at **10:30 a.m.**, for Initial Appearance or for other proceedings with respect to an indictment previously returned against him.

2. Dejuan Scott shall remain in the custody of this Court until his case is resolved. Following resolution of Mr. Scott's case, he will be returned to the Hamilton County Jail, Chattanooga, Tennessee, unless this Court orders otherwise.

3. If the Sheriff/Warden so elects, the United States Marshal for the Eastern District of Tennessee (or any other duly authorized United States Marshal or Deputy United States Marshal) is directed to receive Dejuan Scott into custody and transport him to and from said Hamilton County Jail, Chattanooga, Tennessee and to and from this Court for the purposes described herein.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

I hereby certify that this is a true and correct copy of the electronically filed original document.
ATTEST: LeAnna R. Wilson, Clerk
By: _____ 8/2/2023
Deputy Clerk

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.                                    Case No.: 1:22−cr−00053−CLC−SKL

DEJUAN SCOTT

### DUE PROCESS PROTECTIONS ACT ORDER

Pursuant to the Due Process Protections Act, the Court confirms the United States' obligation to produce all exculpatory evidence to the defendant pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and orders it to do so. Failing to do so in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the Court.

ENTER.

s/ Susan K Lee
UNITED STATES MAGISTRATE JUDGE

I hereby certify that this is a true and correct copy of the electronically filed original document.
ATTEST: LeAnn R. Wilson, Clerk
By: _____ 8/2/2023
Deputy Clerk

```
REGNO..: 01243-510 NAME: SCOTT, DEJUAN


FBI NO...........: R7TJ18PAM          DATE OF BIRTH: 06-24-1997  AGE:  25
ARS1.............: LEX/A-DES
UNIT.............: YOU GP              QUARTERS.....: Y06-330U
DETAINERS........: NO                  NOTIFICATIONS: NO

FSA ELIGIBILITY STATUS IS: ELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 01-15-2028

THE INMATE IS PROJECTED FOR RELEASE: 07-15-2028 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------
COURT OF JURISDICTION...........: TENNESSEE, EASTERN DISTRICT
DOCKET NUMBER...................: 1:22-CR-00053-CLC-SK
JUDGE...........................: COLLIER
DATE SENTENCED/PROBATION IMPOSED: 09-07-2022
DATE COMMITTED..................: 10-11-2022
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                    FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:     $500.00        $00.00          $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $10,039.59

  REMARKS.......: 1:22-CR-00053-CLC-SKL(1)

---------------------CURRENT OBLIGATION NO: 010 ---------------------
OFFENSE CODE....:   540    18:1951 RACKETEER, VIOLENCE
OFF/CHG: 18:1951 HOBBS ACT ROBBERY CT.1S - 5S


SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:  120 MONTHS
TERM OF SUPERVISION............:    3 YEARS
DATE OF OFFENSE................: 11-15-2019




G0002      MORE PAGES TO FOLLOW . . .
```

SENTENCE MONITORING
COMPUTATION DATA
AS OF 12-02-2022

REGNO..: 01243-510 NAME: SCOTT, DEJUAN

-----------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 12-01-2022 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 12-01-2022 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 09-13-2022
TOTAL TERM IN EFFECT............: 120 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:  10 YEARS
EARLIEST DATE OF OFFENSE........: 11-15-2019

JAIL CREDIT.....................:  FROM DATE    THRU DATE
                                   01-07-2020   09-12-2022

TOTAL PRIOR CREDIT TIME.........: 980
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 540
TOTAL GCT EARNED................: 108
STATUTORY RELEASE DATE PROJECTED: 07-15-2028
ELDERLY OFFENDER TWO THIRDS DATE: 09-07-2026
EXPIRATION FULL TERM DATE.......: 01-06-2030
TIME SERVED.....................:   2 YEARS     10 MONTHS     26 DAYS
PERCENTAGE OF FULL TERM SERVED..:  29.0
PERCENT OF STATUTORY TERM SERVED:  34.0

PROJECTED SATISFACTION DATE.....: 07-15-2028
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: 09-13-22 DCB, PRIM FED CUSTODY

G0000       TRANSACTION SUCCESSFULLY COMPLETED

On Mar 25, 2022, at 1:52 PM, Maio.Gianna <Gianna_Maio@fd.org> wrote:

Kevin, once this federal paperwork is filed, you will place a detainer, correct? If that is the case, I think it is best for Dejuan to be sentenced in Hamilton County before being released to the federal detainer. Otherwise, he will have to go back to Hamilton County after he is federally sentenced and we run the risk of him being sent to TDOC. To that end, I just want to be sure that the Hamilton County judgments designate the BOP as the place where he serves his sentence, right?

Also: I am in the Silverdale parking lot. I could not get in earlier because the yard is closed for a fire truck and ambulance. I am hoping to wait it out and still see him today. If not, Eliza is helping

On Mar 25, 2022, at 2:16 PM, Brown, Kevin (USATNE) <Kevin.Brown@usdoj.gov> wrote:

I will file a writ not a detainer. He should not have to go back to Hamilton County for mere entry of the judgment. I'm in court right now.

Let's all have a phone conference Monday and I can explain my understanding better. Again, we may want to discuss with Bieber.

Sent from my iPhone

On Mar 25, 2022, at 2:43 PM, Maio.Gianna <Gianna_Maio@fd.org> wrote:

I just had a long conversation with John, and he is probably going to call you, Kevin. It sounds as though he risks going to TDOC unless his state judgments say time served. I explained the extenuating medical conditions and he said there may be some tug-of-war between state and federal as to who houses him given his medical needs (even if the judgments say concurrent and both sentences are to be served at the BOP). I may also need to talk to regional BOP counsel.

On Mar 25, 2022, at 2:53 PM, AnCharlene Davis
<ancharlene.davis@hcdatn.org> wrote:

Time served will not work on our cases here.

I will be available to discuss at 8am on Monday
by conference call. You can call my cell or I can
send out a WebEx link. Let me know what you
would prefer.

AnCharlene Davis

Assistant District Attorney

Hamilton County District Attorney's Office
600 Market Street, Suite 310
Chattanooga, TN 37402
ancharlene.davis@hcdatn.org
(423) 209-7446 (w)
(615) 420-8398 (c)

On Mar 25, 2022, at 3:05 PM, Brown, Kevin (USATNE)
<Kevin.Brown@usdoj.gov> wrote:

I've talked to Bieber too. Appropriate course is plea and
sentence in state court. I immediately file a writ once that
occurs. He won't have to go back to local custody because
he has no further cases to litigate. He either goes to BOP or
TDOC.

Sent from my iPhone

On Mar 25, 2022, at 3:59 PM, Maio.Gianna <Gianna_Maio@fd.org>
wrote:

I do not think Mr. Scott is comfortable with either TDOC or BOP, since the
goal has been BOP. Perhaps we could discuss further Monday.

On Mar 25, 2022, at 4:17 PM, Brown, Kevin (USATNE) <KBrown@usa.doj.gov> wrote:

I don't think we can control it 100%.

Sent from my iPhone

**From:** Brown, Kevin (USATNE) <Kevin.Brown@usdoj.gov>
**Sent:** Friday, March 25, 2022 4:24 PM
**To:** Maio.Gianna <Gianna_Maio@fd.org>

**Cc:** AnCharlene Davis <ancharlene.davis@hcdatn.org>; Williams, Eliza <ElizaW@hamiltontn.gov>
**Subject:** Re: [EXTERNAL] Re: Dejuan Scott

And that is based on my conversation with Bieber today.

Sent from my iPhone

On May 26, 2022, at 6:39 PM, Maio.Gianna <Gianna_Maio@fd.org> wrote:

Hello John,

We have briefly talked about Mr. Scott before. He was a federal target for two years and was recently indicted. He is at Silverdale. He has a serious autoimmune condition that

causes large pus-filled sacs to grow on most of his body. He has had 12 surgeries **in 2022 alone** at Erlanger to remove the sacs, which can grow deep into the muscle/tissue. He is in need of constant wound care to try to prevent infection. He has court with Judge Lee and Judge Collier on June 1. I am asking if you would consider moving him to Irwin County when he comes for court on June 1.

Thank you.

**From:** Bieber, John (USMS) <John.Bieber@usdoj.gov>
**Sent:** Thursday, May 26, 2022 8:56 PM
**To:** Maio.Gianna <Gianna_Maio@fd.org>
**Cc:** Brown, Kevin (USATNE) <Kevin.Brown@usdoj.gov>
**Subject:** Re: [EXTERNAL] DeJuan Scott: requested move to Irwin County

No he will stay at Silverdale till he is designated since they have been treating him and Erlanger is familiar with his issues. As soon as he is designated I will ship him to Irwin. No reason to make Irwin deal with his issues if Erlanger is familiar.

| From: | Maio.Gianna |
| To: | "Brown, Kevin (USATNE)" |
| Cc: | AnCharlene Davis; Williams, Eliza |
| Subject: | RE: [EXTERNAL] Re: DeJuan Scott |
| Date: | Monday, March 28, 2022 1:12:00 PM |

Hello all,

This is what I learned after talking to someone at the BOP Regional Counsel's Office today. I copied his contact information below (although I think someone else – not Matthew – answered this morning) in case you would like to verify the same. I am hoping that you will consider not going forward with the plea today so that we can continue to try to craft a resolution that gives Mr. Scott the best possible chance of serving his sentence at the BOP. His medical situation is deteriorating – he is no longer receiving Humira because it was no longer working. That means he will need even more surgeries to remove the pus-filled cysts. They are also not even sure that they have the correct diagnosis at this point because the medication is not effective.

Regional Counsel confirmed what the Marshals told Kevin and me Friday: Because DeJuan is in primary state custody, the Marshals will return him on the writ to Hamilton County after he is federally sentenced. When they do, he will go to TDOC to serve his sentence. The BOP will not honor language in the plea agreement that designates the BOP as the place where he will serve his state sentence. This has been a source of friction between state and federal prisons with state prisons trying to get the BOP to house their inmates, so they are watching for it.

I believe there are several ways to best ensure that he serves the sentence federally.

1. Enter a plea to time served in Hamilton County.
2. Dismiss his pending Hamilton County charges without prejudice. He will be arrested on the federal warrant since the Information plea paperwork is now signed. Hamilton County can re-indict him on the four counts you intend that he pleads to. Once at the BOP, he can file an IADA petition to go to Hamilton County to enter a plea and be sentenced to 10 years concurrent.
3. Bond him out on his Hamilton County charges. He will be arrested on the federal warrant since the Information plea paperwork is now signed. Once he serves his 10-year federal sentence, he will return to Hamilton County court following release from custody to enter a plea in Hamilton County to time served.

Matthew Mellady, Mid-Atlanta Regional Counsel
Phone: 301-317-3120
Fax: 301-317-3132
mmellady@bop.gov

**Subject:** RE: dejuan scott

No, this didn't go out. I will send it today.

*Melissa L. Stewart*

*Legal Assistant*

*Federal Defender Services*

*One Central Plaza*

*835 Georgia Avenue, Suite 600*

*Chattanooga, Tennessee 37402*

*Phone: 423-756-4349*

**From:** Maio.Gianna
**Sent:** Tuesday, November 15, 2022 11:39 AM
**To:** Stewart.Melissa <Melissa_Stewart@fd.org>
**Subject:** FW: dejuan scott

he called this morning to make sure this was sent, because he does not have it yet. i told him i would double-check.
thanks!

**From:** Maio.Gianna
**Sent:** Tuesday, November 1, 2022 10:02 AM
**To:** Stewart.Melissa <Melissa_Stewart@fd.org>
**Subject:** dejuan scott

he is at fmc lexington. would you please mail him a copy of his discovery + indictment?
also, please include in the cover letter that if he wants a transcript of the sentencing hearing, he should reach out to elizabeth coffey via email at Elizabeth_Coffey@tned.uscourts.gov.

thanks!

| From: | Maio.Gianna |
| --- | --- |
| To: | Gibson.Angela; Stewart.Melissa |
| Subject: | RE: dejuan scott |
| Date: | Tuesday, November 15, 2022 11:52:27 AM |

yes, that is right – we need to send him the state discovery. thanks.

**From:** Gibson.Angela <Angela_Gibson@fd.org>
**Sent:** Tuesday, November 15, 2022 11:51 AM
**To:** Stewart.Melissa <Melissa_Stewart@fd.org>
**Cc:** Maio.Gianna <Gianna_Maio@fd.org>
**Subject:** RE: dejuan scott

Gianna, correct me if I'm wrong, but we didn't receive anything directly from the government? I have no discovery letter to him, and the only letter I have is with a copy of his state discovery to him.

Melissa, what was sent to him is here under records since it wasn't discovery from the U.S. government – be sure and use this redacted copy – I must have redacted for a reason:

O:\ATTORNEY\zz-Closed Client Files\Gianna Maio\Scott, Dejuan C22-369^241\6-Records-Criminal, Medical, School, etc\Combined State PDF to client_Redacted.pdf

**From:** Stewart.Melissa <Melissa_Stewart@fd.org>
**Sent:** Tuesday, November 15, 2022 11:43 AM
**To:** Gibson.Angela <Angela_Gibson@fd.org>
**Subject:** RE: dejuan scott

Do you know where his discovery would be? I didn't see any in his file.

*Melissa L. Stewart*
*Legal Assistant*
*Federal Defender Services*
*One Central Plaza*
*835 Georgia Avenue, Suite 600*
*Chattanooga, Tennessee 37402*
*Phone: 423-756-4349*

**From:** Stewart.Melissa
**Sent:** Tuesday, November 15, 2022 11:41 AM
**To:** Maio.Gianna <Gianna_Maio@fd.org>

**Gibson.Angela**

| | |
|---|---|
| **From:** | Maio.Gianna |
| **Sent:** | Tuesday, September 13, 2022 11:15 AM |
| **To:** | Dee Green |
| **Cc:** | Gibson.Angela |
| **Subject:** | Hamilton County dismissals |
| **Attachments:** | 2022_09_13_10_58_36.pdf |

Hello Ms. Green,

DeJuan's Hamilton County cases were dismissed today. I attached a copy for DeJuan's records.
The Marshals should be moving him to the Irwin County Detention Center in the very near future.

**Dejuan Scott**
**Phone call with Eliza Williams**
**3.16.21**

Serious health issue that they are managing at Silverdale. The last time she met with him he said his medical care was adequate. He is facing four separate aggravated robberies in Hamilton County. ADA has not made an offer. She is generally unreasonable. Filed bond motion, but ADA said if she proceeded on that, all negotiations would cease. Thinks we should set up a meeting with us, the ADA and Kevin. She has heard that the feds are interested in charging him with unrelated criminal activity. Dejuan does not know what that is. He wants to work something out and is being reasonable. He has been in jail for about a year. His mom, on the other hand, is not as reasonable and wants him to be released on home confinement due to his medical issues.

**Kevin Brown**
**Conversation re: Dejuan Scott**
**3.18.21**

Has him on 5 robberies of check-cashing places. Used a knife (no gun). Officers start seeing a patterns of vehicle and type of knife (distinctive). Found the knife in his car when he was arrested. He either went back to a place he attempted to rob or a place he robbed. The tellers called the detective. His car was from a buy here, pay now lot and had a tracker installed by the car dealership. They gave CPD access to that data. Conduct a traffic stop, he has clothes similar to the description in his car or found in the house pursuant to a search warrant. It is like a knife/brass knuckle combo. He is Mirandized at the traffic stop and they start talking to him. He is further interviewed at Amnicola. It is incomplete Miranda, although he has not fully researched it. He does not think he needs the statement on two of the robberies, maybe three. It was over the span of about a month.

(1) **11.15.19**, American Trust Cash Advance – 5910 Reagan Lane, Collegedale

Forced co-workers to the back at knifepoint. Grabbed employee, suspect got in the safe.

Black male, 20's, bandana covering mouth. Grey sweatshirt, dark-colored Chevy Malibu.

(2) **12.28.19**, 8:55, Quick Credit, Gunbarrel (video surveillance that shows the unique knife)

Manager saw 4-door bluish-green sedan parked in the lot.

(3) **12.28.19**, 9:39, Cash Express, Highway 58

Got $2,300; covered bottom half of his face. Newer, dark-colored sedan.

(4) **12.28.19**, 12:47: Great American Loans, Ringgold Road

Blue Chevy Malibu. Front door was locked, talked over the intercom. Had gotten warning of other area robberies. Did not enter.

(5) **1.3.20**, 10:00: Cash Express, 7341 East Brainerd

Thin male, dark pants, dark jacket. Entered blue or green Chevy Malibu.

Blueish Chevy Malibu pulled into the parking lot 20 minutes before the robbery.

He did a cell tower dump.

One of the store videos shows the parking lot with him getting into the car.

Has no real criminal history. Everyone describes the knife in the same way. Thinking he would plead here by information to two of the robberies and plead to charges in state court to run concurrent. Knows Anjarlene (ADA) pretty well. He told the detectives he has pill problem.

**1.7.20**: 7431 East Brainerd, which was robbed on 1.3. Employees see the same Malibu enter the lot. Thinks they were informed based on tracker. Knife found matches knife used in multiple robberies. I can go over and watch the surveillance videos. He does not think all of the stores have video.

Video from 7431 East Brainerd. Thinks cop leaves out some of the warnings.

**Dejuan Scott**
**Call with Eliza**
**10.13.21**

Being seen daily to drain cysts and being given dressing. He has a fluid lump on his face that he needs to have drained. Per Silverdale records, he is being given Humira. It looks like attempts are being made every day for him to talk to the doctor, and he refuses visits sometimes per records.

She suggested his mom could schedule appointments and then she can request that he be seen for those specific appointments. Stabilizing him right now. He went to surgery center in July.

Eliza thinks he wants to have more control over his medical care.

Got his first vaccine dose, but denied the second dose.

His mom is very dramatic and does not believe he could have done any of this – she will not like the fact that he is going to Georgia.

AnCharlene Davis is very indecisive and is sensitive to medical issues and family concerns.

Offer: One count in state running concurrent to one federal count.

Maybe release on bond in state court to federal hold following federal indictment. Possible transfer to Irwin County for medical care.

That way he has a chance at getting better medical care before going to the BOP.

Avoids state court law that multiple robbery counts must be consecutive.

**Dejuan Scott**
**10.14.21**

Meeting with AnCharlene Davis, Eilza Williams, Kevin Brown

There are two attempts – one is at Collegedale and in the other one, the employees locked the door.

> Base: 20
>
> +3 brandished weapon
>
> +2 physical restraint
>
> 22, I: 41-51 (11.19 offense date)
>
> Add 2 levels under grouping
>
> 2B3.1 is specifically excluded from grouping

AnCharlene wants to see a total of 15 years between state and federal time; said she would consider 12 years on an aggravated robbery to run concurrently.

Kevin suggested indicting three of the cases and having three cases remain on the state side.

Most he could get federally with grouping would be 27, I (70-87) because there is a 5-level cap on grouping.

Set for status 11.18 in Hamilton County. Agent Nix. That could become his plea date.

We file information plea agreement, Hamilton County plea + sentencing date happens, and then he is writted over on the federal detainer.

**Dejuan Scott**
**Memo to file re: Silverdale visit**
**10.21.21**

Had a baseball-sized growth on the side of his face. His wounds have not been healing since his June surgery. He was supposed to see his dermatologist on Monday or Tuesday and they did not take him. They were supposed to talk him about why the Humira is not working that effectively.

The wound on his hip has been draining quite a bit. He had blood clots come out for several days. He has been notifying the medical staff. He is getting his medication. There is no doctor seeing him every day. He has not seen a doctor since September. He sees the nurse every day to get his medication.

They are on lockdown because of stabbings in his pod. People are stabbing others and coming back to the same pod the next day. They don't do any investigations. The cameras don't work.

I told him about the meeting with Kevin and AnCharlene and Eliza last week to discuss a global plea offer. I said he is looking at around 5 years on Hobbs Act robbery charges, and the state prosecutor is wanting much more jail time than that. I explained what the elements of Hobbs Act robbery are.

He tells his mom is ok, but he is not ok mentally. He will definitely need therapy after this. His mom is trying to set up mental and physical health appointments and possibly request furloughs.

Mom: Dejuanda Green – 760.0797

He is having trouble explaining things to his mom, and his aunt has tried as well. I said I could schedule an office appointment with his mom to try to review everything with her.

I told him about the better care at Ocilla. He is somewhat familiar with it because his cousin is there. He would feel more comfortable if I could explain it to his mom.

He is close to Demetrus Coonrod – he has known her since he was a child. We talked about rights restoration.

*send all reports that we got from Eliza – he never received them
*look at eligibility for student loans (appears that he would be eligible, even on supervised release)
*call and schedule meeting with mom and brother – he will listen to their advice

**Dejuan Scott**
**Meeting with Ashton Hall and Dejuanda Green**
**10.27.21**

There is another Dejuan Scott in custody in Memphis. He has a different birth year.

When he was working security, a woman pulled a gun on him, so he pulled a gun on her. The cops would not give him his gun back because they said it was involved in a crime in Atlanta. Dejuan told her he bought the gun at a gun show. He was charged with reckless endangerment because he shot the gun in the air when there were kids in the car. Those charges were dropped.

He was working at Taylor Funeral Home and Global Security and Volkswagen.

He clashed with the detective on the case at Coyote Jack's. Dejuan tried to give CPR to a guy who was shot outside Coyote Jack's. The cop pointed a gun at Dejuan for attempting to provide aid to the man who was dying. They suspected the cop of having shot the guy, but the cop was not supposed to have been there. The cop said to Dejuan, 'You did not see a mother fucking thing.' He said the cop supposedly came to make amends with him at the jail.

His doctor told him that he would die if he di not get that medication. The girl he was with at the time was putting a lot of financial pressure on him.

He has had over 8 emergency surgeries. He has been told the tumors are too close to a nerve. His cellmate called to say that he was having seizures on the floor. Dejuan did not remember anything. He is supposed to be getting physical therapy. He has tubes in his body that were supposed to be physically removed – the doctor there was supposed to cut them out. He needs to see a dermatologist since he could have skin cancer. There are also bullet fragments in his legs.

She sensed something was off. She had a tracker on her car, so she knew Dejuan was at his mom's house. His ex said she put the tracker on her car because she thought Dejuan was cheating. She said she and Dejuan got into it and he left. His ex told her that he had just been arrested, and she passed out. Dejuan was using her car to take her to work. He was having difficulty working. He would stay at the house until it was time to go pick up her ex.

She spoke to the manager at Yates about having his car released, and the manager told her that his ex and the detective went to get stuff out of the car. Her understanding is that the car never went to the police station. The dealership sent a letter to his ex, Charmaine Reed, about getting the car back, but by the time she told his mom about the letter, it was too late to pay for the car.

Dejuan would feed the homeless with his mom every month.

**Dejuan Scott**
**Memo to file re: meeting with Dejuanda Green**
**12.2.21**

Doctor wanted him to take the antibiotic every day for 10 days.

Changed Humira to weekly and increased the milligrams. He is still in pain but not as much as he was before the surgery. They shaved some of his hip down in a prior surgery. He has lost a lot of weight so they can't do a skin graft because he lost 36 pounds.

The tubes were supposed to be surgically removed and he was not taken back to the hospital for that.

Eliza seemed upset that she and his family were talking to the state prosecutor in court.

She advised his mom to schedule appointments for Dejuan and Eliza would seek a furlough. Eliza told her the furlough was partially dependent upon what we were doing on the federal side.

Dejuanda has sent Eliza character letters.

Surgeon said he has been doing this for 25 years, and Dejuan's was one of the most severe he has seen. He said if he did not get that medicine, he would die. One of the surgeons began to cry.

Three days before his arrest, fear paralyzed him, and she found him in a fetal position later that afternoon. He put his head in her lap crying that night about how he was going to die.

Several community members reached out to say that they could have sought resources to get him medication. Even with insurance, it was $5,000/month. One doctor said they could do antibiotics off and on to see if it would shrink.

The tumor is wrapped around his spine. He also has tumors growing on his hip.

He was on a pain medication when he gave a statement to the police.

After he had surgery, he could not walk. He had tumors all over his back that could not even be covered with gauze. The tumors would bleed and pus and have to wear four shirts at the funeral home.

The day of his arrest, he called his mom at noon and said he was hurting and tired of being in pain. He told his mom he did not her to have to worry about getting his medication. Five hours later, his girlfriend called. He was supposed to be going to see his niece and go pick up his girlfriend to go to the gym. Her neighbor called her to say the FBI and DEA were at her house looking for him. She passed out.

Hidradenitis suppurativa

July, 2016: He and five friends were in an apartment complex. A car came over the hill and started shooting out of the sun roof. He covered one of the girls. One bullet hit him in the back and one hit him in the leg. The fragments are still in his body and have aggravated the condition. They can't remove the one in his back because it is too close to his spine.

He has had 8-9 surgeries since his January arrest.

Another inmate called to say that he was having seizure and was on the floor.

**DeJuan Scott**
**Memo to file re: meeting with AnCharlene, Kevin, and Eliza**
**2.11.22**

Judge Poole has said this case is old and there needs to be movement by 2.17.

Kevin wants waiver and information signed before he enters a plea in state court.

Offer is 10 years concurrent federal and state sentences.

Will not agree to anything less than a plea to aggravated robbery.

Kevin will not agree to take the cases entirely from the state.

If he files a bond motion, AnCharlene will pull the offer and Kevin will indict him.

EPHS Baroness Erlanger Hospital
975 East 3rd Street
Chattanooga TN 37403-2147

Scott, Dejuan Miquel
MRN: 01680470, DOB: 6/24/1997, Sex: M
Adm: 12/17/2019, D/C: 12/20/2019

**12/17/2019 - ED to Hosp-Admission (Discharged) in EE Wing 3 (continued)**

Case 736968 (INCISION AND DRAINAGE OF SUPPURATIVE HIDRADENITIS) (continued)

Dejuan Miquel Scott
01680470
6/24/1997

DATE OF PROCEDURE:
12/18/2019

PREOP DIAGNOSIS:
Extensive hidradenitis of chest, trunk, back, right leg

POSTOP DIAGNOSIS:
Extensive hidradenitis of chest, trunk, back, right leg

PROCEDURE:
Extensive and complex incision and drainage of hidradenitis abscesses involving chest, abdomen, back, right buttock, right thigh

SURGEON:
Surgeon(s):
Stephen Greer, MD

ANESTHESIA:
General

SPECIMEN:

| ID | Type | Source | Tests | Collected by | Time | Destination |
|---|---|---|---|---|---|---|
| A : c and s, gram stain, aerobic and anaerobic | Wound Intraoper ative | Back, Upper | GRAM STAIN, CULTURE ANAEROBE | Stephen Greer, MD | 12/18/2019 1755 | Lab via Transporter |

ESTIMATED BLOOD LOSS:
75 mL

INDICATION FOR PROCEDURE:
Dejuan Miquel Scott is a 22 y.o.male with a history of hidradenitis that has been uncontrolled he presented with multiple large abscesses, some of which were draining. We spent some time discussing the treatment options but discussed taking him to the operating room for incision and drainage of multiple abscesses in attempt to get better control of these. These ranged from very small to the larger ones being approximately 10 x 8 cm x 5 cm.

DESCRIPTION OF PROCEDURE:
Patient was taken the operating room placed in the operating table and underwent general endotracheal anesthesia. He was then placed in right lateral decubitus position. From here we were able to evaluate the hidradenitis abscesses. There were several that appear to communicate through small draining spots. We essentially made multiple incisions over some of these previously draining spots. The undermined tissue was explored and loculations were broken down. We were able to connect some of these to place Penroses. This included 1/4 inch Penrose from the thigh to the buttock and then from the buttock to the lower back. Several incisions were made along the lower back with there were no large cavities which support Penrose drains. We also were able to put a Penrose drain in the upper back between 2 portions of draining purulent areas. Once these were done we cleaned the area and placed burn fluff and then placed this over an abdominal binder. The remainder of the dressing was taken down. The patient was then placed in the supine position and repeat prepped and draped. There were essentially 2 areas that had large undermining areas of abscess. We ultimately placed 1/4 inch Penrose vertically along the chest as well as horizontally

Page 90

EPHS Baroness Erlanger Hospital
975 East 3rd Street
Chattanooga TN 37403-2147

Scott, Dejuan Miquel
MRN: 01680470, DOB: 6/24/1997, Sex: M
Adm: 12/17/2019, D/C: 12/20/2019

**12/17/2019 - ED to Hosp-Admission (Discharged) in EE Wing 3 (continued)**
Case 736968 (INCISION AND DRAINAGE OF SUPPURATIVE HIDRADENITIS) (continued)

in the lower abdomen.  At the end of the procedure we had essentially drained all the purulence within.  There was some blood loss noted throughout the drainage of these abscesses.  The patient was expected to extubate and go the PACU in stable condition.


FINDINGS:
Extensive draining hidradenitis
DISPOSITION:
The patient tolerated the procedure well and was brought to the PACU in stable condition.

Stephen Greer, MD
12/18/2019
7:18 PM


Electronically signed by Stephen Greer, MD at 12/18/2019  7:22 PM


### Perioperative Nursing Note
#### Kelly Ratchford, RN at 12/18/2019  4:17 PM

Patient prepped and ready for surgery. Pre and post op expectations explained. All questions answered. No current needs.

Electronically signed by Kelly Ratchford, RN at 12/18/2019  4:18 PM


#### Robert Turner, RN at 12/18/2019  7:05 PM

To PACU #9 via stretcher with CVM reflects NSR , resp on 8 LSM lungs clear an unlabored O2 sat @ 100 %, resting quietly no c/o pain or nausea Lt back/ abd with penrose drain, burnfluff, binder CDI ,Report to Corning Rn to room 303 vss no c/o pain or nausea family Charmaine 596-0632 updated and sent to room 303 resting quietly  Hr 86 not tachy

Electronically signed by Robert Turner, RN at 12/18/2019  7:35 PM

Case 1:23-cv-00193-TRM-SKL    Document 1    Filed 08/25/23    Page 73 of 80    PageID #: 146

EPHS Baroness Erlanger Hospital
975 East 3rd Street
Chattanooga TN 37403-2147

Scott, Dejuan Miquel
MRN: 01680470, DOB: 6/24/1997, Sex: M
Adm: 1/8/2020, D/C: 1/13/2020

**01/08/2020 - ED to Hosp-Admission (Discharged) in BEH NW8 GS/Plastics/Uro (continued)**

Consult Notes (continued)

  Nose: Nose normal.
  Mouth/Throat:
   Mouth: Mucous membranes are moist.
 Eyes:
   General: No scleral icterus.
   Right eye: No discharge.
   Left eye: No discharge.
   Extraocular Movements: Extraocular movements intact.
   Pupils: Pupils are equal, round, and reactive to light.
 Neck:
   Musculoskeletal: Normal range of motion.
 Cardiovascular:
   Rate and Rhythm: Normal rate.
   Pulses: Normal pulses.
 Pulmonary:
   Effort: Pulmonary effort is normal. No respiratory distress.
 Abdominal:
   General: Abdomen is flat. There is no distension.
   Tenderness: There is no tenderness.
 Genitourinary:
   Comments: **Rectal/penis/testes exam deferred**
 Musculoskeletal: Normal range of motion.
   General: No swelling or tenderness.
 Skin:
   General: Skin is warm.
   Capillary Refill: Capillary refill takes less than 2 seconds.
   Findings: Lesion present.



 Comments: **Draining hydradenitis**
 Neurological:
   General: No focal deficit present.

EPHS Baroness Erlanger Hospital
975 East 3rd Street
Chattanooga TN 37403-2147

Scott, Dejuan Miquel
MRN: 01680470, DOB: 6/24/1997, Sex: M
Adm: 1/8/2020, D/C: 1/13/2020

**01/08/2020 - ED to Hosp-Admission (Discharged) in BEH NW8 GS/Plastics/Uro (continued)**

H&P Notes (continued)

Social History Narrative
*Works through the Sheriff's department*
*Apparently works a lot with welding materials, and robotics, and is concerned about inhalation injury*
*as well as work*
*Lives with his mother*
*Has no children*

## ALLERGIES
Clindamycin
Vancomycin

## HOME MEDICATIONS

Prior to Admission medications

| Medication | Sig | Start Date | End Date | Taking? | Authorizing Provider |
|---|---|---|---|---|---|
| sulfamethoxazole-trimethoprim (BACTRIM DS, DOUBLE STRENGTH,) 800-160 mg per tablet | Take 1 tablet by mouth 2 (two) times a day. | 12/20/19 | | Yes | Historical Provider, MD |
| doxycycline (MONODOX) 50 mg capsule | Take 50 mg by mouth 2 (two) times a day. | | | | Historical Provider, MD |
| HYDROcodone-acetaminophen (NORCO) 5-325 mg per tablet | Take 1 tablet by mouth every 6 (six) hours as needed for moderate pain Indications: acute pain following an operation. | 12/20/19 | | | Tyler Koestner, MD |
| oxyCODONE-acetaminophen (PERCOCET) 5-325 mg per tablet | Take 1 tablet by mouth every 4 (four) hours as needed for moderate pain. | 12/2/19 | | | Clint Christensen, MD |

## REVIEW OF SYSTEMS

Review of Systems 12-point-ROS is complete and negative except as noted in HPI.

## PHYSICAL EXAM

BP 123/62 (BP Location: Left arm, Patient Position: Sitting)  | Pulse (!) 95  | Temp 36.4 °C (97.5 °F) (Oral)  | Resp 16  |
Ht 1.753 m (5' 9")  | Wt 79.4 kg (175 lb)  | SpO2 100%  | BMI 25.84 kg/m²

Physical Exam
Constitutional: He is oriented to person, place, and time. He appears well-developed and well-nourished. No

Case 1:23-cv-00193-TRM-SKL    Document 1    Filed 08/25/23    Page 75 of 80    PageID #: 148

EPHS Baroness Erlanger Hospital
975 East 3rd Street
Chattanooga TN 37403-2147

Scott, Dejuan Miquel
MRN: 01680470, DOB: 6/24/1997, Sex: M
Adm: 1/8/2020, D/C: 1/13/2020

**01/08/2020 - ED to Hosp-Admission (Discharged) in BEH NW8 GS/Plastics/Uro (continued)**

**H&P Notes (continued)**

**Attestation signed by Ashley L Smith at 1/8/2020 9:01 PM**

I have seen and examined patient and discussed plan of care with NP Lazcano.

22 yo M recently admitted to general surgery service for hydradenitis brought in from jail due to ongoing drainage from wounds that couldn't be managed at their facility.

He is awake, alert, NAD, eating dinner, even unlabored respirations, calm and cooperative.

Wounds not evaluated as in hallway bed.

Admit to inpatient. General surgery following and to manage wound care. ID evaluated and recommended zyvox. Cont supportive care.

A Smith MD

### Adult Hospitalist
### History & Physical

Dejuan Miquel Scott 6/24/1997 01680470
Hospital Day: 1 Kenneth Maniscalco, MD
1/8/2020
Location:[AL.1T] HW 110[AL.1M]

## HPI

Dejuan Miquel Scott is an 22 y.o. male[AL.1T] with PMH significant for multiple recurrent draining wounds with prior abcess drainage, hydradinitis supurativa, cellulitis, GSW with retained bullet,[AL.1M] chronic[AL.2M] leukopenia[AL.1M] who presents to Erlanger Hospital from correctional facility due to multiple draining wounds from his known hydradenitis supurativa which could not be managed at the jail facility. Patient has been evaluated by surgery, from which service he was discharged on 12/20/2019, as well as infectious disease is following patient. Patient denies any current pain, discomfort, difficulty breathing, chest pain, shortness of breath, or syncope. Patient is accompanied by police escort. All questions answered. No further complaints.[AL.2M]

## CHIEF COMPLAINT [AL.1T]

Recurrent draining wounds[AL.1M]

## PMH

Past Medical History:

| Diagnosis | Date |
|---|---|
| • Cellulitis | |
| *Multiple bouts of cellulitis on back, abdominal wall, neck* | |
| • GSW (gunshot wound) | 07/2017 |
| *bullet still in lower back* | |
| • Hydradenitis | |
| • Leukopenia | |
| *Chronically low WBC of about 4.0* | |

Case 1:23-cv-00193-TRM-SKL    Document 1    Filed 08/25/23    Page 76 of 80    PageID #: 149

EPHS Baroness Erlanger Hospital
975 East 3rd Street
Chattanooga TN 37403-2147

Scott, Dejuan Miquel
MRN: 01680470, DOB: 6/24/1997, Sex: M
Adm: 1/8/2020, D/C: 1/13/2020

**01/08/2020 - ED to Hosp-Admission (Discharged) in BEH NW8 GS/Plastics/Uro**

## ED Provider Note

### ED Provider Notes by Eliea Sneij, MD at 1/8/2020 1433

| | | |
|---|---|---|
| Author: Eliea Sneij, MD | Service: — | Author Type: Resident |
| Filed: 1/8/2020 4:35 PM | Date of Service: 1/8/2020 2:33 PM | Status: Signed |
| Editor: Eliea Sneij, MD (Resident) | | |

**HPI**

**Chief Complaint**
Patient presents with
- Multiple Complaints[ES.1T]

**HPI**
Scott is a 22-year-old male with hx[ES.2M] of hydradenitis supportivia with recent I&D drainage by Dr. Greer. The patient is sent her by Jail staff because they are unable to care for his dressing/wounds with the limited staffing members. The patient has multiple abscess drained from his stomach/chest/back/leg area.
The patient denies any chest pain, sob, nausea, vomiting, diarrhea.[ES.3M]

**Patient History**

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Cellulitis | |
| *Multiple bouts of cellulitis on back, abdominal wall, neck* | |
| • GSW (gunshot wound) | 07/2017 |
| *bullet still in lower back* | |
| • Hydradenitis | |
| • Leukopenia | |
| *Chronically low WBC of about 4.0* | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • ABSCESS DRAINAGE | | |
| *Abdominal wall* | | |
| • BACK SURGERY | | |
| • CYST REMOVAL | | |
| *from neck area* | | |
| • INCISION AND DRAINAGE DEEP NECK ABSCESS | | |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Diabetes | Mother | |
| • Diabetes | Father | |
| • Heart disease | Father | |
| • Cancer | Maternal Grandmother | |

**Social History**

**Tobacco Use**
- Smoking status:      Never Smoker
- Smokeless tobacco:   Never Used

Substance Use Topics

DE JUAN MIQUEL SCOTT
REG NO. #01243-510
FMC LEXINGTON
FEDERAL MEDICAL CENTER
LEXINGTON
P.O. BOX 14500
LEXINGTON, KY 40512

CVP-X

TO:

<>01243-510<>
Federal Court Clerk
900 Georgia Ave #317
Chattanooga, TN 37402
United States

AUG 22 2023









DE JUAN MIQUEL SCOTT
REG NO. #01243-510
FMC LEXINGTON
FEDERAL MEDICAL CENTER
LEXINGTON
P.O. BOX 14500
LEXINGTON, KY 40512



TO: ∞01243-510∞
Federal Court Clerk
900 Georgia Ave #317
Chattanooga, TN 37402
United States



CERTIFIED MAIL